**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**LEELAND EISENBERG,**

      **Plaintiff,**

    **v.**                                                            **CIVIL ACTION NO. 22-cv-10194-IT**

**PEOPLE'S REPUBLIC OF CHINA,**
**THROUGH  THE HON. YI WANG,**

      **Defendant.**

**MEMORANDUM AND ORDER**

May 19, 2022

**TALWANI, D.J.**

Before the court is Leeland Eisenberg's Complaint [Doc. No. 1], Motion to Appoint

Counsel [Doc. 2], Application to Proceed without Prepayment of Fees and Affidavit [Doc. No.

3], Motion for Service by Clerk [Doc. 4], Motion to Correct Docketing Error [Doc. 8] and

Motion to Clarify Residency-Jurisdiction [Doc. 10]. Eisenberg, who is now incarcerated at

FMC-Butner, alleges that the People's Republic of China ("PRC") through "gain of function"

research at a laboratory in Wuhan, China, created COVID -19 that escaped the lab and spread

through air passenger traffic, eventually infecting Eisenberg in his prison cell in September

2021. Compl. ¶ 2. Eisenberg claims that that the PRC knew since the Fall of 2019 that COVID-

19 was spreading around the world, but simultaneously kept these alleged facts secret, and

permitted international air travel to continue through its state-owned airlines and facilities.

Compl. ¶¶ 3-5. Eisenberg claims that, as a result, he eventually became "infected with and

contracted COVID-19" on September 29, 2021. Compl. ¶ 7. Eisenberg claims monetary

damages for unspecified torts and, anticipating the jurisdictional hurdle, asserts that his suit may

proceed under the "commercial activities" and "non-commercial tort for personal injury"

exceptions to the Foreign Sovereign Immunities Act, 28 U.S.C. §1604 et seq.. For the reasons stated below, the court grants leave to proceed in forma pauperis and, after considering the legal arguments presented by Eisenberg and upon screening, and directs Eisenberg to show cause by June 17, 2022, why this action ought not be <u>DISMISSED</u> for lack of jurisdiction.

1.    The Application to Proceed without Prepayment of Fees is <u>ALLOWED</u>. Pursuant to 28 U.S.C. § 1915(b)(1), the court assesses an initial partial filing fee of <u>$81.18</u>. The remainder of the fee, <u>$268.82</u>, shall be collected in accordance with 28 U.S.C. § 1915(b)(2).[1] The Clerk shall send a copy of this Order to the Treasurer's Office at FMC-Butner, along with the standard Notice to Prison form.

2.    The court grants the <u>Motions to Correct Docketing Error</u> in part in that the clerk shall correct the cause of action and nature of suit on the docket sheet to reflect a Nature of Suit Code of 540 Other Prisoner Petitions - Mandamus and Other[2] and not 550 – Other Prisoner Petitions - Civil Rights.  The Cause of Action is changed to 28:1332pi ("Diversity-Personal Injury"). The court observes that while the Nature of Suit and other statistical data on the docket

---

[1] Pursuant to 28 U.S.C. § 1915(b)(1), "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of-- (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal. 28 U.S.C. § 1915(b)(1).

[2] This Nature of Suit Code is described by the Administrative Office as: "Action by prisoner currently in custody for a writ of mandamus to compel action by a judge or government official relating to the prisoner's confinement, including conditions of confinement. **This category also includes any actions other than mandamus brought by a prisoner currently in custody, whether or not it relates to his confinement, if it is not classifiable under any other nature of suit category under Prisoner Petitions** (for example, action by prisoner to recover property taken by the government in a criminal case)." Civil Nature of Suit Code Descriptions (Rev. 4/22) (emphasis added).

should be accurate, this is not a "serious error" as Eisenberg asserts and has no effect on the handling or outcome of his case.

3.      The Motion to Clarify Residency and Jurisdiction is construed as a notice of Eisenberg's address and asserted basis for jurisdiction, and not a motion. The document includes a duplicate Motion to Correct Docketing Error. No action need be taken on this submission and the Clerk is directed to terminate this motion.

4.      The Motion to Appoint Counsel is <u>DENIED</u> without prejudice.  Although pursuant to the 28 U.S.C. §1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel," it is well settled that "[t]here is no absolute constitutional right to a free lawyer in a civil case." <u>DesRosiers v. Moran</u>, 949 F.2d 15, 23 (1st Cir. 1991).  The First Circuit has held that a court's denial of a motion to appoint counsel is subject to reversal if: (1) a plaintiff is indigent; and, (2) exceptional circumstances exist such that the denial of counsel will result in a fundamental unfairness impinging on his due process rights. <u>Id.</u>; 28 U.S.C. 1915(e)(1). "To determine whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing, inter alia, on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself." <u>Id.</u> At this stage of the proceedings, the motion is premature and, on this record, Brown has not yet demonstrated "exceptional circumstances" that warrant appointment of counsel.

5.      The Motion for Service by Clerk is DENIED without prejudice subject to renewal if summonses issue in this action.

6.      The Complaint is subject to screening pursuant to 28 U.S.C §1915(e)(2) because Eisenberg is proceeding in forma pauperis. Under that statute, the court must dismiss an action

to the extent that, among other things, it fails to state a claim upon which relief can be granted or seeks monetary damages from a party that is immune. The court also has an independent obligation to sua sponte inquire into its own subject matter jurisdiction, see McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004), and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3). In conducting this review, the court liberally construes Eisenberg's complaint because he is proceeding pro se. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

7.    Upon screening, this action is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) because the PRC is presumptively immune under the Foreign Sovereign Immunity Act, 28 U.S.C. §1604 et seq ("the FSIA" or the "Act"), and therefore this court lacks jurisdiction under 28 U.S.C. § 1330(a).

"The district courts of the United States are courts of limited jurisdiction, defined (within constitutional bounds) by federal statute." Badgerow v. Walters, --- U.S. ----, 20-1143, 2022 WL 959675, at *4 (U.S. Mar. 31, 2022). With respect to claims against foreign states, such as the PRC, Congress has limited the jurisdiction of district this court:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either [the FSIA] or under any applicable international agreement.

28 U.S.C.A. § 1330(a).

It is well-settled law that absent legislation to the contrary, "[t]he Foreign Sovereign Immunities Act, 'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'" OBB Personenverkehr AG v. Sachs, 577 U.S. 27, 30 (2015) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989)); accord

Merlini v. Canada, 926 F.3d 21, 27 (1st Cir. 2019). The Act "establishes a presumption of foreign sovereign immunity from the jurisdiction of the courts of the United States that typically controls the jurisdictional question." Merlini, 926 F.3d at 27 (quotations and citation omitted). The Act "does, however, set forth a list of express exceptions to the foreign sovereign immunity that it generally recognizes, such that foreign states are not immune from suit in federal court if one of those enumerated exceptions to immunity applies." Merlini, 926 F.3d at 27. "The result is to spell out, as a matter of federal law, the suits against foreign sovereigns that American courts do, and do not, have power to decide." Cassirer v. Thyssen-Bornemisza Collection Found., 20-1566, 2022 WL 1177497, at *4 (U.S. Apr. 21, 2022). "[U]nless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Fed. Republic of Germany v. Philipp, 141 S. Ct. 703, 709 (2021) (quoting Saudi Arabia v. Nelson, 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993)).

The Supreme Court has held that "[a]t the threshold of every action in a District Court against a foreign state . . . the court must satisfy itself that one of the exceptions applies—and in doing so it must apply the detailed federal law standards set forth in the Act." Verlinden B.V. v. C. Bank of Nigeria, 461 U.S. 480, 493–94 (1983). This analysis is mandatory: "even if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is unavailable under the Act." Id. at 494 n.20. This comports with the court's obligation to sua sponte inquire as to its jurisdiction. See Fed. R. Civ. P. 12(h); see also Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); Brewer v. Socialist People's Rep. of Iraq, 890 F.2d 97, 100-01 (8th Cir. 1989) ("Generally, the party seeking to invoke immunity is allocated the burden of proof on

that issue. Yet, even if a party fails to enter an appearance and assert its claim of immunity, a court must determine whether immunity is available pursuant to the FSIA.") (citations omitted).

As a starting point, the PRC is "'presumptively immune from the jurisdiction of United States courts' unless one of the Act's express exceptions to sovereign immunity applies." <u>Sachs</u>, 577 U.S. at 31 (quoting <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 355 (1993)). To be sure, the burden of production and persuasion has not been decided by the First Circuit, but the First Circuit assumed without deciding that where defendants were foreign sovereigns, "the burden of production is on [the plaintiff] to offer evidence showing that, under one of the listed exceptions, immunity should not be granted to the [foreign sovereign] defendants." <u>Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Ints. in Int'l & Foreign Cts.</u>, 727 F.3d 10, 17 (1st Cir. 2013); <u>accord</u> <u>Hyewoong Yoon v. Seyeon Lee</u>, 433 F. Supp. 3d 18, 24 (D. Mass. 2019). "At the outset, plaintiffs must demonstrate that the Court has jurisdiction to hear their claims and that [a sovereign] is not immune from suit" under the FSIA. <u>Colvin v. Syrian Arab Republic</u>, 363 F. Supp. 3d 141, 152 (D.D.C. 2019).

Since the beginning of the COVID-19 Pandemic, the FSIA has been viewed by legal commentators as likely cutting off claims against the Peoples Republic of China. <u>E.g.</u> Larkin, <u>Suing China Over COVID-19</u>, 100 B.U. L. Rev. Online 9 (2020); Testimony of Chimène Keitner to United States Senate Committee on the Judiciary, "The Foreign Sovereign Immunities Act, Coronavirus, and Addressing China's Culpability" (June 23, 2020), available at https://www.judiciary.senate.gov/imo/media/doc/Keitner%20Testimony.pdf ("[U]nder current U.S. law, there is no civil jurisdiction over China, or any Chinese governmental entity, for damages arising from China's governmental misconduct in concealing or failing to prevent the

spread of COVID-19."); Ronen Perry, Who Should Be Liable for the Covid-19 Outbreak?, 58 Harv. J. on Legis. 253, 266 (2021).

Although there are cases currently proceeding in the federal district courts, this court has not located a single case that has determined that any exception of the Act affirmatively applies to COVID-19 damages claims to individuals based on allegations that the PRC is responsible for the spread of the virus throughout the World.  See Missouri ex rel. Schmitt,, 2022 WL 59382, at *2 (staying default proceedings in class action pending consideration of pending and future briefing on FSIA).[3] Indeed, over the last two years, these types of claims brought by prisoners against the PRC have been uniformly rejected by district courts. See e.g., Edwards v. Country of China, 220CV01579CMCMGB, 2021 WL 4483085, at *3 (D.S.C. Aug. 30, 2021) ("Plaintiff's claim against China for 'spraying' the coronavirus 'around the world' is plainly frivolous" and recommending dismissal because China immune under FISA), report and recommendation adopted, 2:20-CV-1579-CMC, 2021 WL 4483068 (D.S.C. Sept. 30, 2021); Vreeland v. People's Republic of China, 20-CV-2285 (TSC), 2021 WL 1317528, at *2 (D.D.C. Apr. 8, 2021) ("Plaintiff's generalized allegations attributing the origins of COVID-19 to actions that took place in China . . . do not establish jurisdiction under the [the Act's] listed exceptions"); Stirling v. China, 3:20-CV-00713-SB, 2020 WL 5638630, at *1 (D. Or. Aug. 14, 2020) (recommending sua sponte dismissal of action against the PRC under the Act based upon allegations of "its negligent release of the Covid-19 virus to the United States"), report and recommendation adopted, 3:20-CV-00713-SB, 2020 WL 5637399 (D. Or. Sept. 21, 2020).

---

[3] The court observes that in one case where service has been attempted, the People's Republic of China has refused service on the grounds of sovereign immunity. See March 22, 2022 Letter from Ministry of Justice, People's Republic of China to Lynn Fitch, Mississippi Attorney General, Mississippi ex. Rel. Lynn fitch v. People's Republic of China et al., 20-cv-00168-TBM-RPM, [Doc. No. 13].

Eisenberg's complaint is similar to those earlier prisoner complaints, but asserts further that the PRC's use and operation of airlines and airline facilities bring it within commercial activities and non-commercial torts exceptions to the Act. Eisenberg's theory, while creative, appears meritless.

First, in Count I,[4] Eisenberg claims exemption under the "commercial activities" exception. Compl. 10. This exception is narrow. It exempts from the Act an action: "in which the action is [(1)] **based upon** a commercial activity carried on in the United States by the foreign state; or [(2)]) [**based**] **upon** an act performed in the United States **in connection** with a **commercial activity** of the foreign state elsewhere; or [(3)] **upon** an act outside the territory of the United States **in connection** with a **commercial activity** of the foreign state elsewhere and that act causes a direct effect in the United States. 28 U.S.C. § 1605 (a)(2) (emphasis added). Eisenberg claims that all three types of commercial activity apply. Compl. 10-11.

"The Act itself does not elaborate on the phrase 'based upon.'" Sachs, 577 U.S. at 33. As the Supreme Court teaches, "an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit. Rather than individually analyzing each . . . causes of action, [the court] zeroe[s] in on the core of their suit." Id. at 35; accord Merlini v. Canada, 926 F.3d 21, 27 (1st Cir. 2019).

Zeroing in, the core of Eisenberg's claim, see Merlini, 926 F.3d at 27, is not "based upon" commercial activity, but rather political, non-commercial activity of the PRC. See Compl. ¶¶ 1 (defendants as "sovereign officials acting in their official capacity").

---

[4] Eisneberg's "counts" are legal arguments for the application of exceptions to the Act. Liberally construed, the pro se pleading seeks to assert a state-law negligence claim under Massachusetts or Rhode Island law.

Eisenberg's alternative legal argument under Count II, invoking the non-commercial tortious activity exception, fares no better. That exception exempts from the Act actions "not otherwise encompassed in [the commercial activities exception], in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment…" 28 U.S.C. § 1605(a)(5). However, this exception does not "apply to . . .  any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5). Here, the PRC's alleged actions were purportedly done as officially sanctioned actions by the PRC, and therefore would be "discretionary acts." Simply put, "[t]he exception to foreign sovereign immunity for personal injury suits under 28 U.S.C. § 1605 does not apply here because [Eisenberg's] negligence claim is necessarily based on the Chinese government's 'exercise or performance or the failure to exercise or perform a discretionary function[.]'" Stirling, 2020 WL 5638630, at *1; see Fagot Rodriguez v. Republic of Costa Rica, 297 F.3d 1, 8-9 (1st Cir. 2002) (foreign government conduct constituting "a matter of choice" or "involves an element of judgment" is outside the Foreign Sovereign Immunity Act's tortious activity exception); see Nagy v. Naday, No. CV 17-10613-LTS, 2020 WL 1308191, at *2 (D. Mass. Mar. 19, 2020), aff'd sub nom. Nagy v. Dobi, No. 20-1460, 2021 WL 5144462 (1st Cir. July 16, 2021).

Eisenberg's allegations that PRC government officials engineered COVID-19, decided to conceal information concerning its escape from a lab, and failed to prevent the spread of the virus by, among other things, permitting international air travel is not subject to the commercial

activity or non-commercial tortious activity exceptions to the FSIA. Instead, Eisenberg has alleged non-commercial, discretionary acts or omissions by the PRC, and therefore it is not subject to suit under the FSIA.

8.      Failure to comply with this order will likely result in dismissal of this action. Summonses shall not issue except upon further order of the court.

**SO ORDERED.**

May 19, 2022                                         /s/ Indira Talwani
                                                Indira Talwani
                                                United States District Judge